# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

**No. 25-7140**

**September Term, 2025**

FILED ON: AUGUST 11, 2026

EUGENE NYAMBAL,
> APPELLANT

v.

ALLIED BARTON SECURITY SERVICES, LLC,
> APPELLEE

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:14-cv-01904)

---

Before: RAO, PAN, and GARCIA, *Circuit Judges*

## J U D G M E N T

This appeal was considered after oral argument on the briefs and the district court record. The court has afforded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. CIR. R. 36(d). For the reasons stated below, it is:

**ORDERED** and **ADJUDGED** that the district court's orders be **AFFIRMED.**

\*    \*    \*

Eugene Nyambal filed this tort suit against AlliedBarton Security Services, LLC in 2014. After over a decade of litigation, the district court granted summary judgment to AlliedBarton on Nyambal's single remaining defamation claim. Nyambal appeals that decision on substantive grounds. He also challenges numerous interlocutory rulings the district court made in AlliedBarton's favor. We affirm the grant of summary judgment that has resolved this long-pending case and find no reversible error as to Nyambal's other challenges.

## I

The events underlying this litigation began in 2009, when Nyambal was fired from his position as a senior advisor at the International Monetary Fund (IMF). *Nyambal v. Allied Barton Sec. Servs., LLC*, 2025 WL 2389940, at \*1 (D.D.C. Aug. 18, 2025) (*Nyambal IV*). According to his complaint, he was fired because he voiced "serious concerns" about corruption related to a mining project the IMF was pursuing with Cameroon. Compl. ¶ 6. After raising those concerns,

he was "abruptly terminated without notice or explanation" and "immediately denied access to his office." *Id.* ¶ 7. Nyambal alleged that over the next few years, the IMF and its building security contractor, AlliedBarton, "conspir[ed] to retaliate against and damage" him and his reputation. *Id.* ¶ 23. They placed him on a "No Admit List" to prevent him from entering the headquarters of the IMF and its sister organization, the World Bank. *Id.* ¶ 10. AlliedBarton denied him entry on several occasions, painting him as a "security threat" in front of "professional acquaintances," "former colleagues," and "government officials." *Id.* ¶¶ 8–13. The reputational damage of this "blacklisting," Nyambal claimed, led to years of unemployment and devastated his otherwise successful career in international development. *Id.* ¶¶ 20–21.

Nyambal sued AlliedBarton in the Superior Court of the District of Columbia, asserting claims for conspiracy, tortious interference with business relationships, defamation, and intentional infliction of emotional distress. *See id.* ¶¶ 22–35. AlliedBarton removed the suit to federal court. *See* Notice of Removal. The district court dismissed all of Nyambal's claims except the one for defamation. Over a decade later, it granted summary judgment to AlliedBarton on that claim. *Nyambal IV*, 2025 WL 2389940, at *6.

The path to that resolution was arduous. Initially, the district court dismissed Nyambal's complaint entirely, *Nyambal v. AlliedBarton Sec. Servs., LLC*, 153 F. Supp. 3d 309, 319 (D.D.C. 2016) (*Nyambal I*), then partially revived it on reconsideration, *Nyambal v. AlliedBarton Sec. Servs., LLC*, 344 F. Supp. 3d 183, 186–87 (D.D.C. 2018) (*Nyambal II*). During discovery Nyambal filed several sanctions motions against AlliedBarton, *e.g.*, Mots. for Sanctions, Dkt. Nos. 121, 333, and motions to reconsider when these were denied, *e.g.*, Mots. for Recons., Dkt. Nos. 206, 337. After several such denials, Nyambal moved to recuse two different presiding judges, alleging that they were biased against him. *E.g.*, Mots. for Recusal, Dkt. Nos. 112, 343. Those motions likewise failed. *See, e.g.*, Min. Order, Aug. 18, 2025.

Throughout much of this period, the district court required Nyambal to seek leave before filing motions and documents. *See* Min. Order, Sep. 19, 2019. While that restriction was in place, Nyambal repeatedly sought review of interlocutory rulings, *e.g.*, Notices of Appeal, Dkt. Nos. 174, 223, and unsuccessfully sought leave to amend his complaint, *e.g.*, Mots. for Leave to File Am. Compl., Dkt. Nos. 65, 315. AlliedBarton, for its part, filed its answer to the complaint years late, after discovery had concluded and without first seeking leave. *See* Min. Order, Nov. 2, 2022. The clerk entered a default, but the district court set it aside and accepted the answer on reconsideration. *See* Min. Order, Sep. 30, 2023. Nyambal challenges many of these interlocutory decisions in addition to the grant of summary judgment.

## II

Although Nyambal was represented by counsel at oral argument, his briefs were submitted pro se. We thus "liberally construe[]" his appellate filings and his pro se filings below. *Abdelfattah v. DHS*, 787 F.3d 524, 533 (D.C. Cir. 2015). We conclude that none of the arguments he raises on appeal establishes reversible error.

## A

We review the grant of summary judgment de novo, asking whether the record "show[s] that, first, 'there is no genuine issue as to any material fact' and, second, 'the moving party is entitled to a judgment as a matter of law.'" *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir.

2006) (quoting Fed. R. Civ. P. 56(c)). In doing so, "we view the evidence in the light most favorable to" the non-movant, "and draw all reasonable inferences in h[is] favor." *Id.* Under that standard, the district court properly granted summary judgment in favor of AlliedBarton.

Nyambal claimed that AlliedBarton defamed him in October 2013 by preventing him from attending the World Bank's Annual Meeting. *Nyambal I*, 153 F. Supp. 3d at 313, 317–18. Earlier incidents, such as his thwarted attempt to conduct a business meeting at the World Bank in July 2013, were foreclosed by the applicable one-year statute of limitations. *See id.* at 314–15; *see also* D.C. Code § 12-301(4).[1] At summary judgment, Nyambal advanced two theories of liability: AlliedBarton defamed him by placing his name on the Do Not Admit list and/or by denying him entry on October 9, 2013. *See Nyambal IV*, 2025 WL 2389940, at *3–5.[2]

The district court applied the standard test for a defamation claim, which requires the plaintiff to establish (1) a false and defamatory statement (2) that the defendant published (3) at least negligently that (4) either caused "special harm" or was defamatory "as a matter of law." *Id.* at *3 (quoting *Jankovic v. Int'l Crisis Grp.*, 494 F.3d 1080, 1088 (D.C. Cir. 2007)). It correctly determined no genuine disputes of material fact existed on either theory.

On the first, AlliedBarton "marshal[led] affirmative evidence to demonstrate that it did not place Mr. Nyambal on the 'Do Not Admit' list" while Nyambal "failed to provide sufficient evidence—indeed, any evidence—suggesting" otherwise. *Id.* at *5. AlliedBarton's sworn interrogatory responses attested that it "d[id] not compile a 'No Access' list," and its responses to requests for admissions reflected the same. *Id.* The documentary evidence—including that produced by Nyambal—largely confirms this: One email from World Bank Human Resources explained that "Mr. Nyambal's name was on the ["Do Not Admit"] list as provided *by the IMF* to [World Bank Group] Corporate Security," without mentioning AlliedBarton. Pl.'s Mot. for Summ. J. Ex. at 37, Dkt. No. 350-1 (emphasis added).

The evidence Nyambal produced to establish a factual dispute—this and one other email, excerpts of AlliedBarton's contract with the World Bank, and Nyambal's own affidavit—show, at best, that AlliedBarton was generally responsible for security matters at the World Bank. *See, e.g.*, Dkt. No. 350 at 96–99 (contract excerpt); *id.* at 85 ¶ 22 (affidavit). They do not contradict

---

[1] Nyambal mentions in passing that the World Bank's "ongoing administrative review" prevented him from bringing suit sooner. Appellant's Brief 20. But this equitable tolling argument is not developed in any detail and so is forfeited. *See Schneider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005) (declining to resolve issues raised only "in the most skeletal way").

[2] Nyambal also argues that the district court improperly dismissed his tortious interference and intentional infliction of emotional distress claims. *See Nyambal I*, 153 F. Supp. 3d at 316, 318. To the contrary, the district court correctly ruled that Nyambal's complaint had not established that AlliedBarton knew denying him entry to the World Bank would impede business opportunities he would otherwise secure at the Annual Meeting. *Id.* at 316–17; *see also Close It! Title Servs., Inc. v. Nadel*, 248 A.3d 132, 141 (D.C. 2021) (including the defendant's "knowledge of the relationship" as an element of tortious interference). As for the intentional infliction of emotional distress claim, neither putting a name on a list nor denying entry to a building, without more, is behavior so "extreme and outrageous" as to support an intentional infliction of emotional distress claim. *See Nyambal I,* 153 F. Supp. 3d. at 318; *cf. Larijani v. Georgetown Univ.*, 791 A.2d 41, 44 (D.C. 2002).

AlliedBarton's assertion that it was not responsible for constructing this Do Not Admit List.

Nyambal's second theory fares no better. In his complaint, Nyambal described the incident as follows:

> On October 9, 2013, with the belief that the restrictions had been removed, Nyambal and a colleague made arrangements to attend the Annual Meetings of the World Bank in order to meet with government officials and secure contracts. However, Nyambal was again denied access even though he had a three-day pass request on file with the World Bank. Nyambal was once again publicly humiliated in the presence of former colleagues, professional acquaintances and government officials attending the Annual Meetings.

Compl. ¶ 13. Because Nyambal did not further develop any facts surrounding this incident through discovery, we are left with only this paragraph to discern whether the incident could be "reasonably susceptible of a defamatory meaning." *Clawson v. St. Louis Post-Dispatch, L.L.C.*, 906 A.2d 308, 313 (D.C. 2006) (internal quotation marks omitted). It cannot.

Denying a person entry to a location can be defamatory if it implies that the target has "done something disgraceful." *Wallace v. Skadden, Arps, Slate, Meagher & Flom*, 715 A.2d 873, 878 (D.C. 1998). In *Wallace*, the D.C. Court of Appeals explained that "inactivating the plaintiff's access key and thus effectively locking her out of the office" could be defamatory because such a measure "ordinarily" applied "only to [those] who had engaged in criminal or unethical activity." *Id.* at 878 & n.5. But Nyambal provides no basis for a comparable inference here. His own complaint identifies innocent reasons the World Bank might turn someone away, including not holding an entry pass. *See* Compl. ¶ 13. Nor does he offer any details about the circumstances of this incident that would reasonably lead an onlooker to conclude that he was "odious, infamous, or ridiculous." *Clawson*, 906 A.2d at 313 (quoting *Howard Univ. v. Best*, 484 A.2d 958, 989 (D.C. 1984); *see also Saint-Jean v. District of Columbia*, 846 F. Supp. 2d 247, 267 (D.D.C. 2012) (holding that a security guard escort was not "capable of any defamatory meaning," even where it caused onlookers to "laugh[] at" and "mock[]" the plaintiff (internal quotation marks omitted)).

**B**

Nyambal's remaining arguments attempt to establish that remand is necessary to resolve underlying or ancillary issues. None is persuasive.

**1**

Nyambal challenges an array of district court rulings that prevented him from amending his complaint. Appellant's Brief 20–22. Under Federal Rule of Civil Procedure 15(a)(2), leave to amend should be "freely give[n] . . . when justice so requires," and a court "must state its reasons" for denying such a motion. *Barkley v. U.S. Marshals Serv. ex rel. Hylton*, 766 F.3d 25, 38 (D.C. Cir. 2014) (quoting Fed. R. Civ. Proc. 15(a)(2)). We review these rulings for abuse of discretion. *See id.*

Most of Nyambal's motions for leave to amend the complaint were permissibly denied for procedural reasons, *see, e.g.*, Min. Order, Dec. 6, 2019; Min. Order, Mar. 25, 2024, or pursuant to reasonable assessments of undue prejudice and delay, *see, e.g.*, Min. Order, Sep. 19, 2019; Min.

4

Order, June 3, 2021. The denial of his February 28, 2019 motion raises a somewhat closer question. *See* Min. Order, May 3, 2019 (denying the motion for "undue delay and undue prejudice to AlliedBarton because this case has been pending for over four years and the parties have engaged in motion practice" (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). But even assuming that the district court abused its discretion, that error would be harmless because the proposed amendments would have been futile. *See Williams v. Lew*, 819 F.3d 466, 471 (D.C. Cir. 2016). The additional theories in Nyambal's amended complaint fail as a matter of law for reasons he had the opportunity and incentive to address through discovery.

Nyambal sought to add claims for false light invasion of privacy and negligence. But the same reasons the October 2013 incident was not "capable of a defamatory meaning" also establish that Nyambal was not presented in a "highly offensive" light. *Close It! Title Servs., Inc. v. Nadel*, 248 A.3d 132, 140 & n.23 (D.C. 2021). Further, "no D.C. case holds that a plaintiff may maintain a negligence action for a defamatory statement when the defamation claim would be barred." *Teltschik v. Williams & Jensen, PLLC*, 748 F.3d 1285, 1287 (D.C. Cir. 2014). Nyambal also sought to add another defamation theory based on AlliedBarton's alleged "republication" of IMF statements about him. Appellant's Brief 18–20. But Nyambal has consistently offered just one explanation for the damage to him and his reputation: AlliedBarton publicly denied him access to the World Bank because he was on the "Do Not Admit" list, thereby portraying him as a "security threat" and causing him to be "blacklist[ed]" in the industry. Pl.'s Mot. for Summ. J. 19–20. His counsel confirmed at oral argument that the republication theory was "part and parcel" of that theory of harm. Tr. of Oral Arg. 12. Because that theory rests on the same denials of access that, as explained above, were not capable of defamatory meaning, it too fails.

## 2

Next, Nyambal argues that the district court improperly allowed AlliedBarton to file a late answer and avoid a default judgment. But properly construed, the decision was appropriate.

AlliedBarton filed its answer 42 months late and without first seeking leave. The district court struck the answer and denied a subsequent motion for leave to late file. *Nyambal v. AlliedBarton Sec. Servs. LLC*, 2023 WL 12088082, at *2 (D.D.C. Sep. 30, 2023) (*Nyambal III*). The clerk entered default. Entry of Default. AlliedBarton then moved for reconsideration and to set aside the default. Mot. for Recons., Dkt. No. 257; Mot. to Set Aside Default, Dkt. No. 264. The district court granted the motion and vacated the default. Min. Order, Sep. 30, 2023.

Although the district court's opinion cites the test for granting leave to late file, its reasoning addresses the test for setting aside an entry of default. *See Nyambal III*, 2023 WL 12088082, at *4–6. Per Federal Rule of Civil Procedure 55(c), a court may set aside an entry of default "for good cause," a decision we review for abuse of discretion. *Khochinsky v. Republic of Poland*, 1 F.4th 1, 6 (D.C. Cir. 2021). In applying Rule 55(c), courts consider "whether (1) the default was willful, (2) a set-aside would prejudice plaintiff, and (3) the alleged defense was meritorious." *Id.* at 7 (quoting *Mohamad v. Rajoub*, 634 F.3d 604, 606 (D.C. Cir. 2011)). Here, the district court found that the first and second factors weighed heavily in AlliedBarton's favor. Although it did not directly address the third, AlliedBarton indisputably asserted a meritorious defense.

First, AlliedBarton explained, and Nyambal did not dispute, that its failure to file was an "embarrassing[]" "oversight," undermining any argument the default was willful. *Nyambal III*, 2023 WL 12088082, at \*2. Second, we have long held that a default "must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party." *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970) (per curiam). Here, AlliedBarton had "engaged in extensive motions practice and in discovery" for almost nine years, and Nyambal acknowledged he was "aware that [AlliedBarton] contested his defamation claim." *Nyambal III*, 2023 WL 12088082, at \*4, \*6. Nyambal thus was not prejudiced by facing "an essentially unresponsive party." *Id*. at \*6 (quoting *H.F. Livermore*, 432 F.2d at 691). Finally, AlliedBarton satisfied the "modest requirement" of asserting a meritorious defense. *Gilmore v. Palestinian Interim Self-Gov't Auth.*, 843 F.3d 958, 966 (D.C. Cir. 2016); *see* Answer 1, 3 ¶¶ 10, 13. We therefore affirm the district court's decisions to set aside the default and permit the late answer; any error in characterizing those decisions was harmless. *See McKenzie Cnty. v. United States*, 131 F.4th 877, 889 (8th Cir.) ("It is our responsibility to construe a judgment so as to give effect to the intention of the court." (cleaned up)), *cert. denied*, 146 S. Ct. 357 (2025).

**3**

Nyambal's remaining challenges also do not warrant reversal.

Many of these remaining challenges concern documents Nyambal was prevented from filing and thus trace back to the district court's filing restriction. *See* Min. Order, Sep. 19, 2019. Under that restriction, Nyambal had to seek leave to file all documents and motions, except notices of appeal. *See* Min. Order, May 22, 2020; Min. Order, Aug. 15, 2023. He argues that the restriction violated his Fifth Amendment due process rights by impairing his access to the courts without proper notice or an opportunity to be heard. Although restrictions on litigation activity can raise due process concerns, *cf. In re Powell,* 851 F.2d 427, 431 (D.C. Cir. 1988) (per curiam), we have affirmed "vexatious litigant" orders that, similar to the district court's, "merely require[]" a party "to obtain leave of court" to make filings, *Hollis-Arrington v. Fannie Mae*, 2004 WL 2595891, at \*1 (D.C. Cir. Nov. 15, 2004) (per curiam); *see also Gullett v. United States*, 2025 WL 2350209, at \*1 (D.C. Cir. Aug. 13, 2025) (per curiam). Moreover, Nyambal received adequate notice of the filing restriction and continual opportunities to be heard regarding it. *See, e.g.*, Min. Order, Aug. 15, 2023 ("The Court carefully reviews each submission by Mr. Nyambal and when the Court denies leave to file, an explanation on the docket of why leave to file was denied is provided."). That process was sufficient. *See Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) ("Due process is flexible and calls for such procedural protections as the particular situation demands." (cleaned up)).[3]

---

[3] Nyambal also mentions in passing that the filing restriction violated the Equal Protection Clause and First Amendment. We decline to address those arguments. *See Schneider*, 412 F.3d at 200 n.1. The same applies to Nyambal's assertions that the district court erred by denying as moot the motions that were pending when it granted summary judgment. Other than a blanket assertion that these decisions "deprived the plaintiff of a fair opportunity to develop the factual record," Appellant's Brief 27, Nyambal does not "squarely and distinctly" identify how specific motions prejudiced his case. *Schneider*, 412 F.3d at 200 n.1.

6

Nor did the district court abuse its discretion by managing its docket this way. *See* Min. Order, May 22, 2020 (reaffirming the restriction "[i]n the interests of judicial economy and efficient case management"). Initially, the restriction was limited to un-counseled submissions due to Nyambal's duplicative pro se filings. *See, e.g.*, Leave to File Denied, Dkt. No. 31. When that pattern continued, the filing was framed more categorically, *see* Min. Order, Feb. 22, 2022, but the court also offered means by which Nyambal could have it removed, *see* Min. Order, March 3, 2025. Nyambal does not explain why he failed to pursue those avenues, nor does he identify specific documents or motions the court barred that prejudiced his case.

Next, Nyambal argues that the district court erroneously denied a sanctions motion for failure to "conform to the page and content limitations set forth in the court's scheduling order." Min. Order, Dec. 4, 2024. But the motion was reasonably denied—without prejudice—on that basis. *Id.*; *see Banner Health v. Price*, 867 F.3d 1323, 1334–35 (D.C. Cir. 2017) (per curiam). Nyambal did not refile when given the chance, and we decline his invitation to adjudicate a fact-bound motion for sanctions the district court has not considered.

Finally, Nyambal contends that two district court judges who oversaw his case should have recused. But he has consistently based his allegations of bias on unfavorable "rulings resting on record evidence" which "almost never constitute a valid basis for a bias or partiality motion." *SEC. v. Loving Spirit Found. Inc.*, 392 F.3d 486, 493 (D.C. Cir. 2004) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). This too was not an abuse of discretion that would warrant reversal.[4]

\* \* \*

For the foregoing reasons, we affirm the district court's grant of summary judgment and various interlocutory decisions.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* FED. R. APP. P. 41(b); D.C. CIR. R. 41(a)(1).

---

[4] Prior to oral argument, Nyambal moved to supplement the record on appeal. *See* Mot. to Suppl. the Record, Oct. 17, 2025; Mot. to Suppl. the Record, Dec. 10, 2025. "To the extent [he] seeks to supplement the record with materials that are part of the district court's record, the motions are unnecessary and dismissed as moot." *Brown v. Regan*, 2024 WL 1002569, at \*1 (D.C. Cir. Mar. 1, 2024) (per curiam). As to all other documents, the motions are denied because the requested supplements would not alter the above analysis. *See id.* (citing *Colbert v. Potter*, 471 F.3d 158, 166 (D.C. Cir. 2006)).

After oral argument, Nyambal filed a pro se letter under Federal Rule of Appellate Procedure 28(j) reasserting his contentions about AlliedBarton's contractual role and republication of the IMF's statements. Because these arguments were raised in his briefing and lack merit for the reasons explained above, the letter does not affect our disposition.

**Per Curiam**

                **FOR THE COURT:**
                Clifton B. Cislak, Clerk

BY:    /s/
        Daniel J. Reidy
        Deputy Clerk